IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

RASZELL REEDER,

                                 Civil Action No.
                  Plaintiff,      9:09-CV-0977 (GTS/DEP)

       v.

MICHAEL HOGAN, OMH Commissioner;
JOANNE WALDRON, Unit Chief; MAUREEN
BOSCO, Forensic Program Administrator;
GREGORY SAVAGE, Mental Health
Counselor; JAMES MORGAN, Associated
Director of Quality Management;  TARA
BROUSSEAU, IGP Supervisor; THOMAS
LaVALLEY, First Deputy Superintendent;
DALE ARTUS, Superintendent; and
STEVEN RACETTE, Deputy Superintendent
of Security,

                        Defendants.

─────────────────────────────────────

APPEARANCES:

FOR PLAINTIFF:               OF COUNSEL:

RASZELL REEDER, *Pro Se*
94-A-6388
Clinton Correctional Facility
PO Box 2002
Dannemora, NY 12929

FOR DEFENDANTS:

HON. ERIC SCHNEIDERMAN            JUSTIN C. LEVIN, ESQ.
Office of the Attorney General          Assistant Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Raszell Reeder, a New York State prison inmate,

commenced this action on August 28, 2009, pursuant to 42 U.S.C. §

1983, alleging a host of civil rights claims against various employees of

the New York State Office of Mental Health ("OMH") and Department of

Correctional Services ("DOCS").  Following defendants' filing of a motion

to dismiss, the court ordered dismissal of plaintiff's complaint, with leave

to amend as to some claims.  Although plaintiff has been provided two

separate opportunities to file an amended complaint complying with the

terms of the court's memorandum and decision and order dismissing the

complaint, and was specifically warned that his failure to do so would

result in dismissal of the action, he has not filed a proper amended

complaint.  As a result of plaintiff's failure to comply with court directives

2

as well as his failure to diligently prosecute this action, I recommend that the action be dismissed.

I.      BACKGROUND

Reeder commenced this action on August 28, 2009.  Dkt. No. 1. Following service, defendants moved on March 5, 2010 seeking dismissal of plaintiff's complaint for failure to state a cognizable claim.  Dkt. No. 21. On March 1, 2011, I issued a report to the assigned District Judge Glenn T. Suddaby in which I recommended that plaintiff's complaint be dismissed with leave to amend only as to some of the claims.[1]  Dkt. No. 28.  More specifically, I recommended that 1) plaintiff's claims against OMH Commissioner Hogan, Associate Director Morgan, Superintendent Artus, and Deputy Superintendent Racette be dismissed on the grounds that plaintiff had failed to sufficiently allege personal involvement of those defendants in the claimed constitutional violations; 2) plaintiff's claim for interference with the grievance process, which was directed principally at defendant Brousseau, be dismissed for failure to state a cause of action upon which relief may be granted, 3) plaintiff's claim for compensatory

_____

[1]      The delay between filing of the motion and its disposition was occasioned in part upon a referral of the case to another judicial officer for the purpose of conducting a mediation.

damages be dismissed based upon his failure to allege that he suffered physical injury; 4) plaintiff's pendent state law claims be dismissed, and 5) plaintiff's claims for conspiracy and retaliation be dismissed, without leave to amend.  Dkt. No. 28.  With regard to plaintiff's claims for medical indifference, excessive use of force, conditions of confinement, and mail tampering, I recommended that plaintiff be given an opportunity to amend in an effort to state plausible claims.  *See id.*  At that time, discovery was stayed pending a final determination in connection with defendants' motion to dismiss and plaintiff's filing of an amended complaint accepted for filing with the court and the filing of defendants' answer.  *See id.*

By memorandum-decision and order dated March 31, 2011, District Judge Suddaby adopted my report and recommendation in full and ordered dismissal of plaintiff's claims for excessive force, medical indifference, mail tampering, and inadequate conditions of confinement subject to his right to amend with respect to these claims within thirty days.  Dkt. No. 30.  Additionally, plaintiff was expressly advised by Judge Suddaby that his failure to file an amended complaint, limited to these four claims, that cured the pleading defects identified in my report and recommendation would result in dismissal of the entire action.  *See id.*

4

On April 25, 2011, plaintiff filed an amended complaint.  Though timely filed, the pleading failed to comply with the terms of Judge Suddaby's memorandum-decision and order of March 31, 2011.  After careful review of plaintiff's amended complaint, noting that dismissal would be appropriate at that time due to his failure to comply with a court order, I issued a decision and order affording plaintiff yet another opportunity to file an amended complaint that complied with the memorandum-decision and order of the March 31, 2011.  Dkt. No 32. That decision and order detailed the procedural history of this matter and specifically advised plaintiff as to the deficiencies in his amended pleading as well as the requirements for a second amended complaint. Additionally, plaintiff was expressly warned of the consequences of his failure to timely file such a pleading, as follows:

> [P]laintiff is advised that unless he files an amended complaint fully complying with the terms of this decision and order within thirty (30) days from the date of the filing of this order, I will recommend to District Judge Suddaby that this action be dismissed in its entirety.

Decision and Order of April 29, 2011 (Dkt. No. 32) p. 7.

More than thirty days have passed, and plaintiff has failed to file a second amended pleading.  Defendants now seek dismissal of the action

on this basis.  Dkt. No. 33.

II.    DISCUSSION

Rule 41(b) of the Federal Rules of Civil Procedure provides that a

court may, in its discretion, dismiss an action based upon the failure of a

plaintiff to prosecute an action or comply with any order of the court.  *Link*

*v. Wabash R.R. County Independent Sch. Dist.*, 370 U.S. 626, 629-30, 82

S. Ct. 1386, 1388 (1962).  This power to dismiss may be exercised when

necessary to achieve orderly and expeditious disposition of cases.  *See*

*Freeman v. Lundrigan*, No. 95-CV-1190, 1996 WL 481534, at *1

(N.D.N.Y., Aug. 22, 1996) (Pooler, J.) (citing *Rodriguez v. Walsh*, No. 92-

Civ-3398, 1994 WL 9688, at *1 (S.D.N.Y., Jan. 14, 1994) (other citations

omitted)).[2]  The power of a court to dismiss an action for failure to

prosecute is inherent and may be exercised *sua sponte*.  *Lindsey*, 616 F.

Supp. at 453 (citing *Link*, 370 U.S. at 630-31, 82 S. Ct. at 1388-89 ("The

authority of a court to dismiss *sua sponte* for lack of prosecution has

generally been considered an 'inherent power,' governed not by rule or

statute but by the control necessarily vested in courts to manage their own

affairs so as to achieve the orderly and expeditious disposition of

---

[2]    Copies of all unreported decisions cited in this document have been
appended for the convenience of the *pro se* plaintiff.

6

cases.")).  Furthermore, it bears emphasizing that although entitled to some measure of deference, a *pro se* litigant is bound comply with procedural rules and orders of the court.  *See Cruz v. Lashway*, No. 9:06-CV-867, 2009 WL 1734549, at * 3, n.3, n.4, n.5, and n.7 (N.D.N.Y. Jun. 18, 2009) (Suddaby, J. and Treece, M.J).

The propriety of a Rule 41(b) dismissal for failure to comply with an order of the court and/or for failure to prosecute is determined in light of five factors, including

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*See Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (failure to prosecute action) (citation and internal quotation marks omitted); *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (failure to comply with order of court) (citations omitted).  I have carefully evaluated the five factors considered by the Second Circuit when reviewing a district court's order to dismiss an action for failure to prosecute and/or for failure to comply with

an order of the district court, under Rule 41(b), and find that they weigh decidedly in favor of dismissal.

As to the first factor, more than two months have passed since Judge Suddaby's first directive that plaintiff file an amended complaint, and more than 30 days have elapsed since the court's order affording plaintiff a second opportunity to do so.   Although this would not seem to be an inordinate delay, it is exacerbated by the fact that plaintiff has twice failed to comply with the court's directives.

Turning to the second factor, plaintiff has been twice advised that his failure to file a proper amended complaint within the time specified would result in dismissal of the action.  With regard to prejudice, defendants have argued no prejudice.  However, it is conceivable that some prejudice would result due to the age of this litigation alone.  This case has been pending for nearly two years and arises out of events occurring in early 2009, and discovery has yet to commence.  As a result, it seems quite likely that memories of the events in question have faded, relevant documents have been discarded, and potential witnesses have been transferred to other correctional facilities.  *See, e.g., Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of

time always threatens difficulty as memories fade.  Given the age of this case [six years], that problem probably is severe already.  The additional delay that plaintiff has caused here can only make matters worse.").  Moreover,  I find that the need to alleviate congestion on the court's docket outweighs plaintiff's right to receive a further chance to be heard in this matter.  Finally, I have considered less-drastic sanctions, but rejected them.  For example, I am persuaded that issuing a third order directing plaintiff to file an amended complaint would be futile, given his complete failure to respond in any manner to the most recent directive.  On balance, I have concluded that consideration of the five relevant factors weighs in favor of dismissal of plaintiff's complaint.

III.    CONCLUSION

In light of the foregoing, and bearing in mind that courts in this circuit have found that " '[a] plaintiff's lack of diligence alone is enough for dismissal,' " *Carr v Canty*, No. 10 Civ. 3829, 2011 WL 1641439, at * 2 (S.D.N.Y. Apr. 28, 2011) (quoting *West v. City of New York*, 130 F .R.D. 522, 526 (S.D.N.Y.1990) (citing *Messenger v. United States*, 231 F.2d 328, 331 (2d Cir.1956) )), I recommend that this action be dismissed.

For the reasons stated above, it is respectfully

9

RECOMMENDED that defendants' letter request, Dkt. No. 33, be GRANTED and that the action be dismissed based upon plaintiff's failure to diligently prosecute this action and to comply with this court's orders and local rules of practice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby further ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     June 16, 2011
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

10



Not Reported in F.Supp., 1996 WL 481534 (N.D.N.Y.)

(Cite as: 1996 WL 481534 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,
v.
Kevin LUNDRIGAN, C.O., Defendant.
No. 96-CV-1190 (RSP/RWS).

Aug. 22, 1996.
Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report-Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. See Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility-Please Return to Sender." See Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. See Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. Link v. Wabash Railroad County Independent School District, 370 U.S. 626 (1962). This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases. See Rodriguez v. Walsh, No. 92-Civ-3398, 1994 WL 9688, \*1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." See Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

Dansby v. Albany Cty Corr. Facility, No. 95-CV-1525, 1996 WL 172699, \*1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting Perkins v. King, No. 84-3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted); see generally Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, See Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 481534 (N.D.N.Y.)

(Cite as: 1996 WL 481534 (N.D.N.Y.))

on Steven A. Smith, Esq., attorney for the defendant.

**\*2** IT IS SO ORDERED.

N.D.N.Y.,1996.

Freeman v. Lundrigan
Not Reported in F.Supp., 1996 WL 481534 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1994 WL 9688 (S.D.N.Y.)

(Cite as: 1994 WL 9688 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

George RODRIGUEZ, Plaintiff,
v.
Captain WALSH, # 855, Defendant.
No. 92 CIV. 3398 (PKL).

Jan. 14, 1994.

George Rodriguez, pro se.

Antonia Kousoulas, Asst. Corp. Counsel, New York City Law Dept., New York City, for defendant.

MEMORANDUM ORDER

LEISURE, District Judge.

**\*1** Plaintiff George Rodriguez, proceeding *pro se,* filed this action on May 11, 1992 pursuant to 42 U.S.C. § 1983. On May 15, 1992 this action was referred to the Honorable Theodore H. Katz, United States Magistrate Judge, Southern District of New York, for all purposes including dispositive motions. On July 20, 1993 defendant moved for an order dismissing the complaint for failure to prosecute pursuant to Fed.R.Civ.P. 41(b). On October 27, 1993 Magistrate Judge Katz filed a Report and Recommendation (the "Report") in this matter finding that, even exercising the additional patience which the United States Court of Appeals for the Second Circuit ("Second Circuit") requires when cases involve *pro se* litigants, the defendant's motion to dismiss should be granted, and that the action should be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days, after being served with a copy of the Report, to file written objections to Magistrate Judge Katz's Report and Recommendation.[FN1] Although the time to object has expired, no objections have been received by the Court or by Magistrate Judge Katz. Nevertheless, the Court has undertaken a *de novo* review of the record. Based upon

that review, the Court, as discussed below, adopts the Report and Recommendation in its entirety.

The Court's historical power to dismiss an action for failure to prosecute a case is codified in Rule 41(b) of the Federal Rules of Civil Procedure. Rule 41(b) provides, in pertinent part:

(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

*See also* Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962) ("The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."); *Minnette v. Time Warner,* No. 92-7951, slip op. at 4431, 4437, 1993 WL 233525, at \*3 (2d Cir. June 30, 1993) ("[a] district court may, *sua sponte,* dismiss an action for lack of prosecution pursuant to Fed.R.Civ.P. 41(b)." (citing *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42-43 (2d Cir.1982))).

While dismissal of an action for failure to prosecute is " 'a harsh remedy to be utilized only in extreme situations,' " *Romandette v. Weetabix Co.,* 807 F.2d 309, 312 (2d Cir.1986) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam)), this sanction is necessary to allow courts "to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link,* 370 U.S. at 630. *See, e.g., Peart v. City of New York,* 992 F.2d 458, 461 (2d Cir.1993) (affirming dismissal with prejudice where plaintiff's counsel failed to comply with two Court orders and otherwise demonstrated a lack of respect for the Court); *Ali v. A & G Co.,* 542 F.2d 595, 596 (2d Cir.1976) (affirming dismissal with prejudice

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 9688 (S.D.N.Y.)

(Cite as: 1994 WL 9688 (S.D.N.Y.))

where counsel failed to appear for trial despite no showing of delay).

**\*2** In the instant case, plaintiff failed to perform any pre-trial discover or failed to take any steps to prosecute the action, since filing the Complaint over twenty months ago. Plaintiff failed to submit a pre-trial activity report as instructed by the Court, and failed to respond to Magistrate Judge Katz's repeated requests to schedule pre-trial discovery. Moreover, plaintiff failed to respond to any of defendant's discovery requests and failed comply with the Court's order to attend a pre-trial conference scheduled for June 9, 1993. Plaintiff's failure to appear occurred despite the Court's express warning that failure to attend could result in dismissal of the action. At the June 9, 1993 conference, defendant discussed with Magistrate Judge Katz the instant motion to dismiss for failure to prosecute. The motion was filed on July 20, 1993. Plaintiff submitted no opposition to the motion, and has not objected to Magistrate Judge Katz's Report.

Before dismissal is ordered, a court in this Circuit should give *pro se* litigants some notice of the consequences of their actions. *Bobal v. Rensselaer Polytechnical Institute,* 916 F.2d 759, 764 (2d Cir.1990). Here, plaintiff was given numerous warnings of the possibility of dismissal. First, Magistrate Judge Katz expressly informed plaintiff of the possibility of dismissal. Second, defendant's motion papers made it abundantly clear that dismissal could result from plaintiff's failure to respond to defendant's discovery requests. Third, plaintiff had an opportunity to object to Magistrate Judge Katz's Report. Accordingly, plaintiff was properly notified of the possibility of dismissal.

There is no explanation for plaintiff's failure to pursue the action, or his failure to appear at the pretrial conference.[FN2] Under these circumstances, it is appropriate for the Court to conclude that plaintiff has abandoned the action and to dismiss the action with prejudice.

CONCLUSION

The Court has reviewed the Report and finds it legally correct and proper. For the foregoing reasons, IT IS HEREBY ORDERED that the Report and

Recommendation of Magistrate Judge Katz, dated October 27, 1993, is affirmed and adopted in its entirety. Accordingly, defendant's motion is hereby granted, and the action is dismissed with prejudice for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

SO ORDERED.

FN1. Fed.R.Civ.P. 6(a) provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded from the computation." *See also* Fed.R.Civ.P. 6(e) (additional three days for mail).

FN2. It may be of some moment that plaintiff was paroled on February 26, 1993.

S.D.N.Y.,1994.

Rodriguez v. Walsh
Not Reported in F.Supp., 1994 WL 9688 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Herman CRUZ, Plaintiff,
v.
Amber LASHWAY, Physician's Assistant, Defendant.
No. 9:06-CV-0867 (GTS/DRH).

June 18, 2009.
West KeySummary**Prisons 310** 🖙 **192**

310 Prisons

310II Prisoners and Inmates
310II(D) Health and Medical Care
310k191 Particular Conditions and Treatments
310k192 k. In General. Most Cited Cases
**Sentencing and Punishment 350H** 🖙 **1546**

350H Sentencing and Punishment

350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
A prison nurse was not deliberately indifferent to the prisoner's serious medical needs by allegedly denying the prisoner pain medication, in alleged violation of the Eighth Amendment. The prisoner's medications were all ordered to be administered by a nurse due to the belief that he was abusing his medication. The nurse administered pain medication on multiple occasions. The prisoner also offered a sincere apology to the nurse and affirmed that the nurse had been helping him in every possible way. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

Herman Cruz, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, James Seaman, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendant.

***DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this *pro se* prisoner civil rights action are (1) Defendant's motion for summary judgment (Dkt. No. 56), (2) United States Magistrate Judge Randolph F. Treece's Report-Recommendation that Defendant's motion be granted (Dkt. No. 69), and (3) Plaintiff's Objection to the Report-Recommendation (Dkt. No. 70). For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety; Defendant's motion for summary judgment is granted; and Plaintiff's Complaint is dismissed in its entirety.

**I. RELEVANT BACKGROUND**

On July 17, 2006, Herman Cruz ("Plaintiff") filed his Complaint in this action. (Dkt. No. 1.) Construed with the utmost of special leniency, Plaintiff's Complaint alleges that, while Amber Lashway ("Defendant") was a registered nurse at Upstate Correctional Facility and then a physician's assistant at Clinton Correctional Facility, she violated Plaintiff's rights under the First and Eighth Amendments by being deliberately indifferent to his serious medical needs and retaliating against him for filing complaints (specifically, his filing two grievances against her at Clinton Correctional Facility, and a federal lawsuit against several employees at Upstate Correctional Facility). (*Id.* at ¶¶ 6, 7.)

On May 30, 2008, Defendant filed a motion for summary judgment. (Dkt. No. 56.) In her motion, Defendant argues that Plaintiff has failed to adduce admissible record evidence that would create a genuine issue of material fact with regard to his First and Eighth Amendment claims, and that Defendant is protected from liability as a matter of law by the doctrine of qualified immunity. (Dkt. No. 56, Part 20, at 2-14.) Defendant's motion includes a detailed notice of the consequences of failing to respond to her motion. (Dkt. No. 56, Part 1.)

Despite this notice, on June 11, 2008, Plaintiff filed

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

a response to the motion for summary judgment that fails to admit or deny Defendants' factual assertions (in her Statement of Material Facts) in matching numbered paragraphs as required by Local Rule 7.1(a)(3). (Dkt. No. 58.) Instead, Plaintiff argues, for the most part, that Defendant's motion should be denied because she failed to respond to various discovery demands. (*Id.*)

On June 23, 2008, Defendant filed a reply to Plaintiff's response. (Dkt. No. 61.) In her reply, Defendant argues that her motion should be granted because Plaintiff has failed to dispute Defendant's statements of material fact, and that (in any event) any deficiency in her discovery responses was unintentional and immaterial in nature. (Dkt. No. 61, Part 1, ¶¶ 2-5; Dkt. No. 61, Part 2, at 2-4.)

On March 13, 2009, Magistrate Judge Treece issued a Report-Recommendation on Defendant's motion. (Dkt. No. 69.) Generally, Magistrate Judge Treece found that Defendant's factual assertions were deemed "admitted" by Plaintiff pursuant to Local Rule 7.1(a)(3) and that, based on those undisputed material facts, no triable issue of material fact exists with regard to Plaintiff's First and Eighth Amendment claims. (*Id.*) Familiarity with the particular findings of fact and conclusions of law stated Magistrate Judge Treece's Report-Recommendation are assumed in this Decision and Order.

**\*2** On March 26, 2009, Plaintiff filed his Objections to the Report-Recommendation. (Dkt. No. 70.) Generally, in his Objections, Plaintiff argues that Magistrate Judge Treece "ignored" discovery violations committed by defense counsel, which demonstrated a "pre-disposition in his heart" regarding Defendant's motion, and which prevented Plaintiff from being able to create a genuine issue of material fact regarding his claims. (Dkt. No. 70, Part 1.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[FN1] When only general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).[FN2] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

> FN1. On *de novo* review, "[t]he judge may ... receive further evidence ...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g ., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

> FN2. *See also Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at \*1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), aff'd, 86 F.3d 1273 (2d Cir.), cert. denied, 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

**B. Standard Governing Motion for Summary Judgment**

Under Fed.R.Civ.P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed.R.Civ.P. 56(e)(2).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.1998) [citation omitted]; see also Fed.R.Civ.P. 56(e)(2). As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." [citations omitted]. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**\*3** As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

"Factual disputes that are irrelevant or unnecessary will not be counted." Id. [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute-even if that nonmoving party is proceeding pro se.[FN3] (This is because the Court extends special solicitude to the pro se litigant, in part by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[FN4] As has often been recognized by both the Supreme Court and Second Circuit, even pro se litigants must obey a district court's procedural rules.[FN5] For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has failed to properly respond to that statement [FN6]-even where the nonmoving party was proceeding pro se in a civil rights case.[FN7]

FN3. Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir.2002) [citations omitted]; accord, Lee v. Alfonso, No. 04-1921, 2004 U.S.App. LEXIS 21432, 2004 WL 2309715 (2d Cir. Oct. 14, 2004), aff'g, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); Fox v. Amtrak, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4, 2006 WL 395269 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); Govan v. Campbell, 289 F.Supp.2d 289, 295 (N.D.N.Y.2003) (Sharpe, M.J.) (granting motion for summary judgment); Prestopnik v. Whelan, 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

FN4. Krug v. County of Rennselaer, 04-CV-0640, 2006 WL 2669122, at *3 (N.D.N.Y. Sept.18, 2006) (McAvoy, J.) ("When dealing with a pro se party, certain procedural rules apply so as to insure that the pro se litigant is not disadvantaged by the lack of legal training. In this regard, the Local Rules require that [a pro

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

se party be informed of the consequences of failing to respond to a motion for summary judgment, before those consequences may be imposed]."); *see also Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) ("This Court has also held that summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default.") [citations omitted].

FN5. *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *McKaskle v. Wiggins,* 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ("Nor does the Constitution require judges to take over chores for a *pro se* [litigant] that would normally be attended to by trained counsel as a matter of course."); *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) ("[I]in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law [even when that strict adherence inures to the detriment of a *pro se* litigant]."); *Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*"[P]ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") [citation omitted]; *LoSacco v. City of Middletown,* 71 F.3d 88, 92 (2d Cir.1995) ("Although *pro se* litigants should be afforded latitude, ... they generally are required to inform themselves regarding procedural rules and to comply with them .... This is especially true in civil

litigation.") [internal quotation marks and citations omitted]; *Edwards v. I.N.S.,* 69 F.3d 5, 8 (2d Cir.1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, ... *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them .") [citations omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ( "[T]he right [to benefit from reasonable allowances as a *pro se* litigant] does not exempt [the *pro se* ] party from compliance with relevant rules of procedural and substantive law.") [internal quotation marks and citations omitted].

FN6. Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L.R. 7.1(a)(3).

FN7. *See, e.g., Hassig v. N.Y.S. Dep't of Envtl. Conservation,* 01-CV-0284, Decision and Order, at 7 (N.D.N.Y. filed March 4, 2004) (McAvoy, J.), *aff'd,* No. 04-1773, 2005 WL 290210 (2d Cir. Feb.2, 2005); *Lee,* 2004 U.S. Dist. LEXIS 20746, at *12-13, 15, *aff'd,* No. 04-1921, 2004 U.S.App. LEXIS 21432; *Harvey v. Morabito,* 99-CV-1913, 2003 WL 21402561, at *1, 3-4 (N.D.N.Y. June 17, 2003) (Sharpe, M.J.), *adopted by* 99-CV-1913, Order, at 2-3 (N.D.N.Y. filed Jan. 15, 2004) (Munson, J.), *aff'd,* No. 04-1008, 115 F. App'x 521 (2d Cir. Dec.23, 2004); *Krug,* 2006 WL 2669122, at *2-3; *Fox,* 2006 U.S. Dist. LEXIS 9147, at *2-3; *Singleton v. Caron,* 03-CV-0455, 2005 WL 2179402, at *3-4 (N.D.N.Y. Sept.5, 2005) (Peebles, M.J.), *adopted by* 03-CV-0455, 2006 WL 2023000, at *3 (N.D.N.Y. July 18, 2006) (Sharpe, J.); *Govan,* 289 F.Supp.2d at 295; *Butler v. Weissman,* 00-CV-1240, 2002 WL 31309347, at *3 (N.D.N.Y. June 20, 2002) (Sharpe, M.J.), *adopted by* 00-CV-1240, Decision and Order, at 1-2 (N.D.N.Y. filed July

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

22, 2002) (Kahn, J.); *DeMar v. Car-Freshner Corp.,* 49 F.Supp.2d 84, 86 & n. 1 (N.D.N.Y.1999) (McAvoy, C.J.); *Costello v. Norton,* 96-CV-1634, 1998 WL 743710, at *1 n. 2 (N.D.N.Y. Oct.21, 1998) (McAvoy, C.J.); *Squair v. O'Brien & Gere Eng'rs, Inc.,* 96-CV-1812, 1998 WL 566773, at *1 n. 2 (N.D.N.Y. Aug.21, 1998) (Scullin, J.); *see also Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing, in *pro se* civil rights case, district courts' discretion to adopt local rules like 7.1[a] [3] "to carry out the conduct of its business").

## III. ANALYSIS

After carefully reviewing all of the papers in this action, including Magistrate Judge Treece's Report-Recommendation and Plaintiff's Objections thereto, the Court rejects each of Plaintiff's Objections and agrees with each of the conclusions offered in the Report-Recommendation. Magistrate Judge Treece correctly stated the law, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation in its entirety, for the reasons stated therein.

The Court would add only three points. First, the majority of Plaintiff's Objections are simply reiterations of previous arguments that were considered and rejected by Magistrate Judge Treece on October 28, 2008. (*Compare* Dkt. No. 70 with Dkt. No. 68.)

Second, in his Objections, Plaintiff also argues that, although he had requested that a physical examination of his ear take place during dinner (since the drainage he was experiencing in his right ear occurred while he was eating), Defendant examined him an hour before dinner, finding no such drainage. (Dkt. No. 70, Part 1, at 2 .) For the sake of argument, the Court will set aside the issue of whether Plaintiff presented evidence of this fact before Magistrate Judge Treece. *See, supra,* note 1 of this Decision and Order. The important point is that a prisoner's disagreement with a prison nurse's medical judgment regarding when to conduct a physical examination does not represent cruel and unusual punishment under the Eighth Amendment.[FN8] As the Second Circuit once observed:

FN8. *See Estelle v. Gamble,* 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[T]he question of whether ... [a] diagnostic technique [ ] ... is indicated is a classic example of a matter for medical judgment. A medical decision not to order ... like measures[ ] does not represent cruel and unusual punishment. At most it is medical malpractice."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J.) ("Disagreement with prescribed treatment does not rise to the level of a constitutional claim.") [citation omitted]; *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001) ("[A prisoner's] disagreements over ... diagnostic techniques (e.g., the need for X-rays) ... are not adequate grounds for a section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") [citation omitted].

It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[ ] understandably seeks .... We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution.... The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves ....

**\*4** *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986) [internal quotations and citations omitted].

Third, Plaintiff's special status as a *pro se* civil rights litigant does not excuse him from the obligation to comply with Local Rule 7.1(a)(3), once notified of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

consequences of failing to do so (as he was in this case). *See, supra,* Part II.B., and notes 6 and 7, of this Decision and Order. Defendants met their threshold burden on their motion, and Plaintiff chose the perilous path of focusing on Defendant's (assertedly) deficient discovery responses, rather than responding to Defendant's statements of material fact and adducing admissible record evidence to create a genuine issue of material fact. It should be noted that, before he responded to Defendant's motion for summary judgment in this action, Plaintiff had acquired experience responding to a motion for summary judgment in a *pro se* prisoner civil rights action. *See Cruz v. Wead,* 97-CV-0846, Docket Sheet (W.D.N.Y.) (indicating that Plf. filed papers in response to motion for summary judgment on 6/20/01, 6/26/01, 6/28/01, and 7/5/01).

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Treece's Report-Recommendation (Dkt. No. 69) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 56) is ***GRANTED;*** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is ***DISMISSED*** in its entirety. The clerk is directed to enter judgment in favor of the Defendant.

***REPORT-RECOMMENDATION and ORDER***

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Hermann Cruz brings this civil rights action, pursuant to 42 U.S.C. § 1983, asserting that Defendant Amber Lashway was deliberately indifferent to his serious medical needs in violation of his constitutional rights under the Eighth Amendment. Dkt. No. 1, Compl. Plaintiff further asserts that Lashway retaliated against him for engaging in constitutionally protected conduct, thereby violating his constitutional rights under the First Amendment. *Id.*

Specifically, Plaintiff claims that while incarcerated at Clinton Correctional Facility, Defendant denied Plaintiff medical attention and forged his medical records in order to hide Plaintiff's suffering and to punish him in

retaliation for his prior lawsuit against other employees of Upstate Correctional Facility, and for grievances he filed against Defendant. *Id.* at p. 8, Causes of Action. Defendant now moves for Summary Judgment pursuant to FED. R. CIV. P. 56 (Dkt. No. 56), which Plaintiff opposes, (Dkt. No. 58). For the reasons below, it is recommended that Defendant's Motion be **granted** and the Complaint be **dismissed.**

**I. FACTS**

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not, in their entirety, specifically countered nor opposed by Plaintiff. *See* N.D.N.Y.L.R. 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."* (emphasis in original)).

**\*5** Plaintiff was housed in Upstate's Special Housing Unit ("SHU") from around the middle of 2003 until September 16, 2005. Compl. at ¶ 1. While at Upstate, Plaintiff received medication because he suffered from, *inter alia,* Degenerative Disc Disease ("DDD") and two broken ribs. Dkt. 58, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Resp.") at ¶ 12-13. On August 25, 2005, Plaintiff commenced *Cruz v. Church,* 05-CV-1067 (N.D.N.Y.), against certain employees of Upstate; Defendant was not named in that lawsuit. Dkt. No. 56, Def.'s Mot. for Summ. J., Def.'s 7.1 Statement at ¶ 7. On or around September 16, 2005, Plaintiff was transferred to Clinton and placed in that facility's SHU, where he was housed until the commencement of this action. *Id .* at ¶ 2.

Defendant worked as a Registered Nurse at Upstate from 1999 until approximately September 17, 2005. *Id.* at ¶ 3. Around mid-September 2007, Defendant left Upstate for a position as a certified Family & Community Nurse Practitioner ("FNP") at Clinton. *Id.* at ¶ 10-11. As an FNP at Clinton, Defendant typically made daily rotations in SHU on weekdays, during which she would take sick call slips from inmates, write their medical problems in an ambulatory health record ("AHR"), and order prescriptions. *Id.* at ¶¶ 15, 22-23, & 26. Defendant wrote and renewed or refilled many prescriptions for Plaintiff in

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

2005 and 2006. *Id.* at ¶ 27-41.

At the request of other nursing staff, Defendant discontinued Plaintiff's medications on two occasions: January 12 and June 14, 2006. *Id.* at ¶ 42. At Plaintiff's request, Defendant also discontinued Plaintiff's Robaxin medication on March 23, 2006. *Id* . at ¶ 43.

The Clinton pharmacy informed Defendant several times that many of Plaintiff's medication requests were submitted too early. *Id.* at ¶ 48. On January 5, 2006, Defendant put Plaintiff on a 1:1 schedule for medication. *Id.* at ¶ 49. A 1:1 schedule meant that Plaintiff would not keep any medication, instead, a medical provider would bring one dose to Plaintiff when it was time for him to receive medication. *Id.* at ¶ 50.

On January 9, 2006, Plaintiff filed Grievance # CL-52581-06,[FN1] claiming that Defendant was withholding medication from him as retaliation for prior grievances he had filed. *Id.* at ¶ 52. Beginning on January 9, 2006, Plaintiff refused to take any prescription medication; as a consequence and at the request of Nurse Harriman, Defendant discontinued Plaintiff's medications.[FN2] *Id.* at ¶ 53. On January 17, 2006, Defendant spoke with Plaintiff, offering to restart his medication on the 1:1 medication schedule, but Plaintiff refused. *Id.* at ¶ 54. On February 15, 2006, some of Plaintiff's medications were restarted after Plaintiff saw Nurse Miller. *Id.* at ¶ 55. On March 15, 2006, Doctor Lee [FN3] ordered a thirty (30) day supply of Naproxen for Plaintiff with two refills, which were to last until about June 15, 2006. *Id.* at ¶ 61. On March 21, 2006, Plaintiff reported to Nurse Miller that he was "doing okay with the medicine," and so no changes were made to his drug regimen. *Id.* at ¶ 62.

> **FN1.** Defendant asserts Plaintiff filed the Grievance on January 8, 2006, however, it is dated January 9, 2006. Dkt. No. 56, Brousseau Decl., dated May 28, 2008, Ex. B. Also, it appears that Plaintiff filed a Grievance on December 23, 2005, which was given the same index number, # CL-52581-06, as his January 9th Grievance. The Court surmises that given the identical subject matter of these Grievances and their relatively close temporal proximity, they

were likely consolidated into one single grievance.

> **FN2.** Nurse Harriman is not a named Defendant in this action.

> **FN3.** Dr. Lee is not a named Defendant in this action.

**\*6** On May 19, 2006, Plaintiff complained to Nurse Simpson [FN4] of drainage behind his right ear, though Simpson reported finding no drainage. *Id.* at ¶ 66. On May 23, 2006, Plaintiff complained of the same condition to Defendant, but Defendant also found no drainage or other medical problem. *Id.* at ¶ 67. On June 5 and 7, 2006, Plaintiff again complained to Defendant of pain behind his right ear, but Defendant found no clinical signs of infection. *Id* . at ¶ 70. On June 9, 2006, Plaintiff filed Grievance # CL-52519-06, claiming that Defendant ignored his complaints about the pain behind his right ear in retaliation for prior complaints Plaintiff filed against her. *Id.* at ¶ 72.

> **FN4.** Nurse Simpson is not a named Defendant in this action.

Plaintiff commenced this lawsuit on July 17, 2006.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any,' " that there is no genuine issue of material fact. *F.D.I. C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) and *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), accord, *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

**B. Eighth Amendment Claim**

**\*7** Plaintiff alleges that Defendant Amber Lashway violated his Eighth Amendment rights by denying him medical attention and forging his medical records in order to hide his suffering. Compl. at ¶¶ 8-11, 16, 19, 22, & p. 8, Causes of Action. To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The plaintiff must allege conduct that is " 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.1992), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834-35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway I,* 37 F.3d 63, 66 (2d Cir.1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir.1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301-03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Hathaway I,* 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836. This requires "something more than mere negligence ... but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

F.3d 845, 856 (2d Cir.1996) (citing *Farmer* ). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

**\*8** In the case at bar, Plaintiff states that prior to arriving at Clinton he suffered from DDD and two broken ribs, both of which caused him substantial pain. Pl.'s Resp. at ¶ 12-13; Dkt. No. 58, Pl.'s Second Decl.,[FN5] dated June 5, 2008, at ¶ 10; Compl. at ¶ 7. Plaintiff also alleges he suffered pain in his right ear stemming from a previous surgery, which apparently involved the removal of a benign tumor. Pl.'s Second Decl. at ¶ 11; Dkt. No. 56, Amber Lashway Decl., dated May 28, 2008, at ¶ 48.

> FN5. Plaintiff filed two Declarations. The first is attached to his Complaint and the second is attached to his Response in Opposition to the Defendant's Motion for Summary Judgment. We will refer to the former as "Pl.'s First Decl.," and the latter as "Pl.'s Second Decl."

Even assuming, *arguendo,* that such conditions constituted serious medical needs under the Eighth Amendment, Plaintiff has failed to demonstrate that Defendant was deliberately indifferent to those needs. Plaintiff claims Lashway was deliberately indifferent because she: (1) placed Plaintiff on a 1:1 medication schedule, Compl. at ¶ 9; (2) falsely reported on June 14, 2006, that Plaintiff was receiving Advil when he was not receiving such medication, Compl. at ¶ 16; (3) prevented Plaintiff from seeing a doctor by falsely reporting that she examined him on June 12, 2006, Compl. at ¶ 18; (4) delayed Plaintiff's surgery by falsely stating that he refused to sign the form for surgery, Dkt. No. 56, Pl.'s First Decl., dated July 8, 2006, at ¶ 4; (5) cancelled Plaintiff's physical therapy, Pl.'s First Decl. at ¶ 8; and (6) didn't turn in his prescription refills, thereby depriving him of medication, Compl. at ¶¶ 8, 10-11, 15, & 19.

1. *Medication Schedule*

Plaintiff claims that Defendant put him on a 1:1 medication schedule in deliberate indifference to his serious medical needs. As previously explained, such a schedule does not mean that his medication was denied, only that he was not permitted to keep the medication in his cell for future use. Therefore, that claim fails to allege deliberate indifference and should be **dismissed.**

2. *False Reports*

Plaintiff's claim that Defendant falsely reported that he was provided Advil does not on its own state a valid claim under § 1983 and should be **dismissed.**[FN6] *See, e.g., Benitez v. Locastro,* 2008 WL 4767439, at *11 (N.D.N.Y. Oct.29, 2008)* (allegation that defendants falsified plaintiff's medical records did not state a valid § 1983 claim) (citation omitted). Plaintiff's claim that Defendant falsely reported that he refused to sign the form for surgery also should also be dismissed to the extent it is raised as a separate cause of action. *See id.* To the extent Plaintiff alleges that Defendant's falsification delayed his surgery, he does not allege that he suffered any injury as a consequence of said delay, and therefore, has failed to state a valid claim.

> FN6. We consider below Plaintiff's claim that he was denied medication during June 2006.

Plaintiff claims that Defendant falsely alleged to have examined him on June 12, 2006, thereby preventing him from seeing a doctor. However, Plaintiff again has failed to allege any consequential injury stemming from the alleged denial of a consultation with a doctor. Furthermore, Plaintiff does not dispute Defendant's sworn statement that on June 22, 2006, he refused to leave his cell for a more thorough medical evaluation with Lashway. Lashway Decl. at ¶ 62 & Ex. C, Pl.'S AHR, entry dated June 22, 2006. Therefore it is recommended that this claim be **dismissed** as well.

3. *Physical Therapy*

**\*9** Plaintiff claims Defendant improperly cancelled his physical therapy. The record shows that Nurse Miller scheduled Plaintiff for a medical consultation for his chronic lower back pain and DDD, after which physical

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

therapy was recommended for Plaintiff. Lashway Decl., Ex. E, Consultation Req., dated Feb. 15, 2006 & Consultation Rep., dated Mar. 16, 2006. Plaintiff remained in physical therapy from mid-March through June 2006. *Id.,* Consultation Rep., dated Apr. 10, 13, 18, 25, 27, May 2, 11, 19, 23, & June 1, 2006. The physical therapist treating Plaintiff noted on June 1, 2006, that Plaintiff had a full range of motion in his back without pain. *Id .,* Consultation Rep. dated June 1, 2006. In addition, Plaintiff was provided Flexeril, a muscle relaxant, in the Spring of 2006. Thus, Plaintiff was provided both medication and physical therapy for his back, and there is no evidence that Defendant improperly cancelled his physical therapy. Therefore, this claim of deliberate indifference against Lashway should be **dismissed.**

### 4. *Denial of Medication*

Plaintiff's overarching claim is that from September 2005 through July 2006, Defendant deliberately denied him medication by refusing to turn in his prescription requests, and that she prevented him from seeing a doctor. Pl.'s First Decl. at ¶¶ 5 & 8-9. Inmates who seek medical attention are required to fill out sick-call slips containing a brief description of their problem or concern. Lashway Decl. at ¶ 26. Defendant made daily rounds through SHU around 7:00 a.m. to collect sick-call slips and to address issues that could be handled on the spot. *Id.*

Plaintiff mentions the following specific periods from September 2005 through July 2006 during which Lashway allegedly denied him medication by failing to turn in sick-call slips: January 1-31, June 6-14, and July 3-6, 2006. Compl. at ¶¶ 8-13, 15-16, & 19. We consider these claims *seriatim.*

Regarding Plaintiff's claims concerning January 2006, the record shows that Plaintiff filed Grievance # CL-52581-06 on January 9, 2006, in which he claimed that Lashway did not provide him enough pills to meet his ordered prescription of Cetylpyridinum and Benzocaine. Dkt. No.56, Tara Brousseau Decl., dated May 28, 2008, Ex. B, Grievance dated Jan. 9, 2006. The Superintendent denied said Grievance, stating that Plaintiff's "medications were all ordered to be Nurse Administered on 1/5/06 due to the belief that [he] was abusing his medication." *Id.,* Sup't Decision, dated Jan. 9, 2006. On January 12th, Nurse Harriman noted in Plaintiff's AHR that he had

refused medication "for the last three days;" consequently, Harriman requested that Plaintiff's medication be discontinued. Lashway Decl., Ex. C, Pl.'s AHR, entry dated Jan. 12, 2006. Defendant asserts that she discontinued Plaintiff's medication as per Harriman's request, and that his medication was not restarted until February 15, 2006. Lashway Decl. at ¶ 46. Beyond his conclusory claim that Defendant falsified his medical records, Plaintiff does not deny that he refused the medication, nor that his medication was discontinued as a consequence.

**\*10** As per Plaintiff's claim that he was denied medication from June 6-14, 2006, the record shows that Plaintiff submitted Grievance # CL-53519-OC on June 9, 2006, in which he complained of extreme pain on the right side of his face near his ear, alleged that Lashway denied him medical attention, and requested to see a doctor. *Id.,* Ex. C, Grievance dated June 9, 2006. In his appeal of the Inmate Grievance Resolution Committee's (IGRC) response to that Grievance, Plaintiff stated that he was in fact taking ibuprofen for his ear, but that it was not helping, and asked "why the hard time to see the MD[?]" *Id.,* Pl.'s Resp. to IGRC, dated June 16, 2006. The Superintendent denied Plaintiff's appeal, stating that Lashway "ordered Naprosyn pain medication to help the discomfort ... [and] documented that there was no signs of swelling or infection noted. On 6/14/06, the grievant refused to take the Naprosyn." [FN7] *Id.,* Sup't Decision dated June 15, 2006. In his appeal of that decision, Plaintiff stated that he was not provided Advil, but rather, Ibuprofen, which upset his stomach. *Id.,* at Pl.'s Appeal Statement dated June 26, 2006. Thus, by Plaintiff's own admission, he was provided Ibuprofen for his ear pain during this period.

> FN7. Upon information and belief, "Naprosyn" and "Naproxen" are two different names for the same drug used to treat pain and inflammation. Information available at www.drugs.com/naprosyn.

In response to Plaintiff's allegations concerning the first days of July 2006, Defendant states that on July 3rd, she was not at work and on July 4th, she was off for the holiday. Def.'s Mem. of Law at p. 9. Plaintiff does not

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

challenge those assertions, and moreover, Plaintiff's AHR entry for July 3rd was signed by Nurse Harriman, not Defendant, and there is no entry for July 4th. Pl.'s AHR, entries dated July 3 & 4, 2006. The record shows that on July 5th and 6th Defendant ordered Plaintiff Tylenol in response to Plaintiff's request. *Id.,* entries dated July 5 & 6, 2006. Therefore, there is no basis for Plaintiff's claims related to those dates.

Plaintiff's general claim that Defendant did not provide him medication for his pain is contradicted by the record. It is undisputed that Defendant provided Plaintiff Naproxen, a pain killer and anti-inflammation drug, on March 23, April 10, and June 12, 2006; Advil on June 15 and 21, 2006; and Tylenol on July 5, 2006. Also, on March 15, 2006, Dr. Lee ordered Plaintiff a thirty (30) day supply of Naproxen, with two refills, enough to last until June 15, 2006. Lashway Decl., Pl.'s AHR, entry dated Mar. 15, 2006. On March 21, 2006, Nurse Miller noted that Plaintiff stated he was "doing okay [with] the medicine." *Id.,* entry dated Mar. 21, 2006. Finally, in a letter to Lashway dated May 19, 2006, Plaintiff offered his "sincere apology" for filing "numerous complaints questioning [Lashway's] integrity and professionalism," and affirming that Lashway had been "helping me in every possible way a Nurse/PA can." Lashway Decl., Ex. F., Lt. dated May 19, 2006. Thus, the record shows that Plaintiff was provided pain medication on a regular basis.

**\*11** With respect to Plaintiff's broad claim that he was denied medication from September 2005 through July 2006, the record shows that Plaintiff filled out many sick-call slips requesting medication throughout 2006. A review of those slips reveals that on many occasions Plaintiff asked to be seen by "P.A. Lashway," and sought various types of medication and refills for medications previously provided, including: anti-biotic ointment for a rash on his face on February 23rd, March 9th, and April 3rd; "Bacitracin Zinc Ointment" on March 15th, 17th, 20th and 28th; "Methocarbaxul RX # 375642" and "Docusate Sod RX # 373814" on January 3rd; "throat Lozenges" on February 27th, April 10th and 12th; ointment on April 5th, 18th, 20th and May 18th; "Colace" on April 24th; and cream for his ear on February 1st and 3rd. Dkt. No. 58, Exs., Med. Servs. Reqs. from 2006. On July 5th, 6th, and 17th, Plaintiff requested pain medication

for his lower back and ear, and also requested to see a doctor. *Id.,* Med. Servs. Req., dated July 5, 7, & 17, 2006.

Defendant references her own notes in Plaintiff's AHR, which reflect that she wrote, renewed or refilled many prescriptions for Plaintiff in 2005 and 2006, including: 1) Benadryl on 10/05/05, 10/21/05, 10/25/05, 10/31/05, 11/10/05, 11/15/05, and 11/21/05; 2) Naproxen on 10/7/05, 3/23/06, 4/10/06, and 6/12/06; 3) Loratidine on 10/7/05, 10/24/05, 10/25/05, 12/6/05, 12/12/05, 12/19/05, 1/5/06, and 5/17/06; 4) Indocin on 11/1/05, 11/7/05, 11/15/05, 11/18/05, 11/23/05, and 1/5/06; 5) Robaxin on 11/1/05, 11/12/05, 11/23/05, 11/25/05, 1/3/06, and 1/5/06; 6) Colace on 12/12/05, 12/29/05, 1/3/06, 1/5/06, 3/23/06, and 4/21/06; 7) Flexeril on 3/23/06 and 5/26/06; 8) Sepa Smooth Lozenges on 12/8/05, 12/14/05, 12/19/05, 12/20/05, 12/22/05, 12/27/05, 1/3/05, and 1/5/06; 9) Bacitracin ointment on 2/23/06, 3/9/06, 3/15/06, 3/28/06, 4/3/06, 4/5/06, 4/20/06, 5/18/06, and 6/1/06; 10) Hydrocortizone cream on 2/1/06, 2/9/06, 3/9/06, and 4/18/06; 11) laxatives on 10/18/05 and 10/24/05; 12) Tylenol on 7/5/06; and 13) Advil on 6/15/06 and 6/21/06. Lashway Decl., Ex. C, Pl.'s AHR & Ex. D, Def.'s Summ. of Pl.'s AHR. Beyond his allegation that Defendant falsified his medical records, Plaintiff does not deny that Defendant filled out the aforementioned prescriptions on his behalf or that he received these medications, and furthermore, Plaintiff concedes that Defendant "did provide some meds" to him. Pl.'s Resp. at ¶ 24.

Thus, far from displaying a deliberate indifference to Plaintiff's medical needs, Defendant provided Plaintiff with numerous forms of medication of many occasions. Therefore, it is recommended that Plaintiff's medical indifference claims be **dismissed.**

### C. Retaliation Claim

Plaintiff claims that Lashway's alleged acts of deliberate indifference were done in retaliation for: (1) his federal action against other persons in *Cruz v. Church,* 9:05-CV-1067, (N.D.N.Y.), which he filed on August 25, 2005; (2) Grievance # CL-52581-06, filed on January 9, 2006; and (3) Grievance # CL-53519-06, filed on June 15, 2006. Compl. at p. 8, Second Cause of Action.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 9:09-cv-00977-GTS-DEP   Document 34   Filed 06/16/11   Page 26 of 30

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

**\*12** The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) & *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord,* 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia,* the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky,* 2005 WL 2128851, at \*5 (N.D.N.Y. August 30, 2005) (citing *Colon v. Coughlin,* 58 F.3d 865, 872-73 (2d Cir.1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively,* as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ...

constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d at 381 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003) (emphasis in original). This objective test will apply even though a particular plaintiff was not himself deterred. *Id.* If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut,* 193 F.3d 144, 148-49 (2d Cir.1999); *see Hynes v. Squillace,* 143 F.3d 653, 657 (2d Cir.1998); *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994).

The Supreme Court has noted that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967). The Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access ... to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.' " *Franco v. Kelly,* 854 F.2d at 589 (quoting *Haymes v. Montanye,* 547 F.2d 188, 191 (2d Cir.1976)) (emphasis and alterations in original). Therefore, Plaintiff's filing of grievances and a civil action in federal court is protected conduct.

**\*13** Plaintiff claims that the adverse actions taken against him were the alleged deprivations of medical care committed by Lashway. We have already found these deprivation claims to be without merit under the Eighth Amendment standard, and although a different standard applies under the First Amendment, our conclusions hold true under both. Given the abundance of evidence on the record to the contrary and the absence of evidence and specific allegations in support of Plaintiff's claim, we find that Plaintiff has failed to establish that Lashway took adverse actions against him that would deter a similarly situated individual of ordinary firmness from exercising his constitutional rights. Therefore, it is recommended that Summary Judgment be **granted** on this claim. *See, e.g., Linares v. Kudlack,* 2007 WL 4287700, at \*6 (N.D.N.Y. Dec.4, 2007) (finding summary judgment appropriate when plaintiff could not establish that defendant nurses took adverse actions against him).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)

(Cite as: 2009 WL 1734549 (N.D.N.Y.))

**D. Plaintiff's Other Claims**

Plaintiff also makes the following allegations: (1) Defendant "refused to let Plaintiff read the form one signs before surgery," Compl. at ¶ 4; (2) Defendant had other staff members harass Plaintiff, Compl. at ¶ 14; (3) Defendant threatened Plaintiff, Pl.'s First Decl. at ¶¶ 6 & 11; and (4) Other non-Defendants retaliated against him, Compl. at ¶ 24. Plaintiff's claims against persons not named as Defendants will not be considered by the Court. Plaintiff's claims of harassment and threats fail to state a claim under § 1983. *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003) (citing *Alnutt v. Cleary,* 913 F.Supp. 160, 165-66 (W.D.N.Y.1996). Finally, Plaintiff does not state that Lashway's alleged refusal to let him read a surgery form injured him in any way, and in fact, Plaintiff states that he benefitted from two surgeries that were performed at outside hospitals while he was at Upstate. Compl. at ¶ 3. Therefore, it is recommended that these claims be **dismissed.**

**III. CONCLUSION**

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Defendant's Motion for Summary Judgment (Dkt. No. 56) be granted and the Complaint (Dkt. No. 1) be **dismissed** in its entirety; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. ,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

N.D.N.Y.,2009.

Cruz v. Lashway

Not Reported in F.Supp.2d, 2009 WL 1734549 (N.D.N.Y.)
END OF DOCUMENT

Westlaw.

Page 1

Slip Copy, 2011 WL 1641439 (S.D.N.Y.)

(Cite as: 2011 WL 1641439 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Levi CARR, Plaintiff,
v.
Dep. CANTY, Captain Marshal # 1618, Captain
Achado # 141, Captain Evans and Captain Rodriges #
353, Defendants.
No. 10 Civ. 3829(BSJ)(KNF).

April 28, 2011.
Levi Carr, East Elmhurst, NY, pro se.

**REPORT and RECOMMENDATION**

KEVIN NATHANIEL FOX, United States Magistrate
Judge.
  **\*1** TO THE HONORABLE BARBARA S. JONES,
UNITED STATES DISTRICT JUDGE
**INTRODUCTION**

  On March 23, 2010 [FN1], the plaintiff commenced the
instant action, pursuant to 42 U.S.C. § 1983, against
Deputy Canty, and Captains Marshal, Achado, Evans and
Rodriges, alleging the defendants violated his
constitutional rights, through their deliberate indifference
to hazardous conditions of confinement at the Anna M.
Kross Center, on Rikers Island, in August 2009. On July
13, 2010 [FN2], the plaintiff filed his Amended Complaint,
asserting the same claim of deliberate indifference against
the defendants.

> FN1. Although the docket sheet reflects that the
> plaintiff filed his complaint on May 10, 2010, the
> Court follows the so-called "prisoner mailbox"
> rule, whereby a *pro se* prisoner's complaint is
> deemed "filed" at the moment of delivery to
> prison authorities for forwarding to the district
> court. *See Dory v. Ryan,* 999 F.2d 679, 682 (2d
> Cir.1993). In his complaint, the plaintiff
> declared, under penalty of perjury, that he

delivered his complaint to prison authorities on
March 23, 2010.

> FN2. The Court again follows the "prisoner
> mailbox" rule.

  On May 10, 2010, the Clerk of Court issued
summonses for the defendants and, on May 20, 2010,
mailed, to the plaintiff, a Rule 4 Service Package, to
enable him to effect service of process on the defendants.
When the plaintiff failed to file proof of service within the
time permitted under the Federal Rules of Civil Procedure,
the Court, in an order dated October 8, 2010, enlarged his
time to effect service of process until December 1, 2010.
The Court advised the plaintiff that failure to serve the
defendants by December 1, 2010, or demonstrate good
cause for such failure, would result in the issuance of a
report, to the assigned district judge, recommending that
his action be dismissed for failure to prosecute.

  On December 2, 2010, the United States Marshals
Service served Canty, Marshal and Evans, on the
plaintiff's behalf.[FN3] Canty, Marshal and Evans failed to
respond to the Amended Complaint within the time
permitted under the Federal Rules of Civil Procedure. *See*
Fed.R.Civ.P. 12(a). Accordingly, on January 10, 2011, the
Court ordered the plaintiff, on or before January 31, 2011,
to review Fed.R.Civ.P. 41(a) and 55 and make such
application to the court as he deemed appropriate. The
Court cautioned the plaintiff that failure to abide by its
directive would result in the issuance of a report, to the
assigned district judge, recommending that this action be
dismissed, for failure to prosecute. On February 24, 2011,
the Court enlarged the plaintiff's time to comply with its
January 10, 2011 order, until March 31, 2011. As of the
date of this report, the plaintiff has made no application,
pursuant to either Fed.R.Civ.P. 41(a) or 55, nor has he
effected service of process on defendants Achado and
Rodriges.

> FN3. In its January 10, 2011 order, the Court
> enlarged, *nunc pro tunc,* the plaintiff's time to
> effect service of process on these defendants

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1641439 (S.D.N.Y.)

(Cite as: 2011 WL 1641439 (S.D.N.Y.))

from December 1, 2010 to December 2, 2010.

### DISCUSSION

**Served Defendants**

Fed.R.Civ.P. 41(b) provides, in pertinent part, that "[i]f the plaintiff fails to prosecute or to comply ... with a court order ... a defendant may move to dismiss the action or any claim against it." "Although the text of Fed.R.Civ.P. 41(b) expressly addresses only the case in which a defendant moves for dismissal of an action, it is unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute. *La Sane v. Hall's Sec. Analyst, Inc.,* 239 F.3d 206, 209 (2d Cir.2001) (citing *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 1389 [1962] ).

**\*2** The Second Circuit Court of Appeals has held that a district court contemplating dismissal of a plaintiff's case, under Rule 41(b), must consider five factors. *La Sane,* 239 F.3d at 209; *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996). The five factors are: (1) the duration of the plaintiff's failure to prosecute; (2) whether the plaintiff received notice that delay would result in dismissal; (3) whether the defendant will be prejudiced by further delay; (4) whether the district court has balanced its interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the district court has addressed the efficacy of lesser sanctions. *La Sane,* 239 F.3d at 209; *Lucas,* 84 F.3d at 535. None of the factors is, alone, dispositive. *La Sane,* 239 F.3d at 210.

In the instant case, the plaintiff effected service on Canty, Marshal and Evans on December 2, 2010. As early as January 10, 2011, the Court directed the plaintiff to take action with respect to these defendants, who failed to respond to the Amended Complaint. As of the date of this report, the plaintiff has not taken any action, leaving this litigation at a standstill for months. Hence, the Court finds that the first factor weighs in favor of dismissal. Similarly, the second factor militates in favor of dismissal, as the Court put the plaintiff on notice, in its January 10, 2011 order, that failure to take action with respect to the served defendants would result in the issuance of a report, to the assigned district judge, recommending that his action be dismissed for failure to prosecute.

The Court finds the third and fourth factors do not support dismissing the plaintiff's Amended Complaint, as to the served defendants. As Canty, Marshal and Evans have failed to appear to defend against the plaintiff's allegations, allowing the plaintiff to maintain his action cannot be said to cause them any prejudice. Moreover, although a district court has an interest in clearing its calendar of dormant cases, *see Link,* 370 U.S. at 630, 82 S.Ct. at 1389, the "plaintiff's failure to prosecute in this case [is] silent and unobtrusive rather than vexatious and burdensome[.]" *La Sane,* 239 F.3d at 210.

Nevertheless, the Court finds the fifth and final factor supports dismissing this action. No lesser sanction exists to remedy the plaintiff's i.naction. Sanctioning the plaintiff monetarily would be unreasonable, as the plaintiff is proceeding *in forma pauperis,* and other possible sanctions, such as striking the plaintiff's pleading or preventing the plaintiff from presenting certain evidence at trial, would be inappropriate, given the procedural posture of this action.

In light of the Court's findings, and bearing in mind that courts in this circuit have found that "[a] plaintiff's lack of diligence alone is enough for dismissal," *West v. City of New York,* 130 F .R.D. 522, 526 (S.D.N.Y.1990) (citing *Messenger v. United States,* 231 F.2d 328, 331 [2d Cir.1956] ), the plaintiff's Amended Complaint should be dismissed, without prejudice, as to Canty, Marshal and Evans, owing to the plaintiff's failure to prosecute.

**Unserved Defendants**

**\*3** Fed.R.Civ.P. 4(m) provides, in relevant part, that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." On May 10, 2010, the Clerk of Court issued summonses for the defendants in this action and, on May 20, 2010, mailed, to the plaintiff, a Rule 4 Service Package, to enable him to effect service of process. On October 8, 2010, the Court, on its own initiative, provided the plaintiff additional time to serve the defendants, while cautioning the plaintiff that failure to serve could result in dismissal of his action. The

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1641439 (S.D.N.Y.)

(Cite as: 2011 WL 1641439 (S.D.N.Y.))

plaintiff has failed to serve defendants Achado and Rodriges within the time provided by the Federal Rules of Civil Procedure and, later, by the Court, nor has he demonstrated good cause for failing to serve these defendants. Hence, in accordance with the express language of Fed.R.Civ.P. 4(m), it would be reasonable and appropriate to dismiss the Amended Complaint, without prejudice, as to Achado and Rodriges.

## RECOMMENDATION

For the reasons set forth above, I recommend that your Honor dismiss the plaintiff's Amended Complaint, without prejudice, for failure to prosecute and serve process timely.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the plaintiff shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Barbara S. Jones, 500 Pearl Street, Room 1920, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 145, 106 S.Ct. 466, 470 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

S.D.N.Y.,2011.

Carr v. Canty
Slip Copy, 2011 WL 1641439 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.